952 P.2d 1210

**In the Matter of Walter Y. ARAKAKI, General Contractor, Inc., Petitioner–Appellant,**

v.

**STATE of Hawai'i, DEPARTMENT OF ACCOUNTING AND GENERAL SERVICES, Respondent–Appellee.**

No. 20805.

Supreme Court of Hawai'i.

March 25, 1998.

Eric S. Yamagata, on the briefs, Honolulu, for petitioner-appellant.

Russell A. Suzuki and Patricia Ohara, Deputy Attorneys General, on the briefs, for respondent-appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

MOON, Chief Justice.

Petitioner-appellant Walter Y. Arakaki and General Contractor, Inc. [hereinafter, collectively Arakaki], the unsuccessful bidder for the contract to replace swimming pool chlorination systems for various public high schools, appeals from the decision of the Department of Commerce and Consumer Affairs (DCCA) Hearings Officer. The Hearings Officer canceled the entire solicitation [1]

---

1. The record does not indicate whether a second    solicitation process has commenced or will com-

based on his conclusion that the process by which Arakaki's proposal was evaluated violated the State Procurement Code, Hawai'i Revised Statutes (HRS) Chapter 103D (1993) [hereinafter, the Procurement Code].

For the reasons discussed below, we vacate that portion of the Hearings Officer's decision cancelling the solicitation and remand this case to the Hearings Officer for further action consistent with this opinion.

## I. *BACKGROUND*

The following facts are undisputed.

On May 10, 1996, respondent-appellee State of Hawai'i Department of Accounting and General Services (DAGS) issued an Invitation for Bids (IFB) for job number 12–16–0323 to furnish labor and materials for the replacement of swimming pool chlorination systems at five public high schools. As part of the bidding procedure, the IFB required the submission of a bid together with a list of the pool bidder's qualifications and experience as set forth in Section 15480, part I, subsection 1.04 of the IFB [hereinafter, qualification and experience list]. Subsection 1.04 provides:

> 1.04 *QUALITY ASSURANCE*
>
> Bidder Qualification: The pool bidders must have at least 5 years experience in the installation of swimming pool chemical treatment systems, must have a valid State of Hawaii C–49 swimming pool contractor's license, and must list at least 5 pool installations of this type which he has constructed in a satisfactory manner. *Submit statement of qualification and experience list with bid.* Experience list shall include project name, year constructed and phone number of pool manager at project site.

(Emphasis added.)

On June 20, 1996, Arakaki submitted the lowest bid at $349,825.00. However, because

his bid was not accompanied by a qualification and experience list, DAGS rejected Arakaki's bid as "non-responsive" on July 24, 1996.

On July 27, 1996, Arakaki appealed DAGS's rejection of his bid; however, State Comptroller Sam Callejo, on August 2, 1996, affirmed DAGS's rejection. On August 13, 1996, Arakaki requested reconsideration of the August 2, 1996 decision, which Callejo, by letter dated September 13, 1996, denied.

On September 20, 1996, Arakaki filed an administrative appeal with the DCCA. After conferring with the Hearings Officer on March 18, 1997, the parties stipulated to waive the hearing and to submit the matter for determination upon stipulated facts and exhibits. The Hearings Officer addressed whether Arakaki's failure to submit a qualification and experience list with his bid related to an issue of "responsibility" or "responsiveness."[2] If it was a matter of "responsibility," then Arakaki would be entitled to supplement his bid with a qualification and experience list. *Pflueger v. City and County of Honolulu,* 5 Haw.App. 13, 17, 674 P.2d 1019, 1023 (1984). If it was a matter of "responsiveness," then he would be prohibited from supplementing his bid unless the bid defect was a minor deficiency. *Northeast Constr. Co. v. Romney,* 485 F.2d 752, 760 (D.C.Cir.1973).

The Hearings Officer issued his findings of fact (FOF), conclusions of law (COL), and decision on June 23, 1997. With respect to the issue of "responsibility" versus "responsiveness," the Hearings Officer concluded, in part:

> As such, the Hearings Officer finds that *the information required to be submitted* was solely for the purpose of evaluating the bidder's experience and qualification, ie bidder performance capability, and *was therefore a matter of responsibility.*

---

mence for the replacement of chlorination systems.

**2.** The hearings officer's conclusion of law, which is unchallenged by the parties explains:

Pursuant to HRS § 103D–104 and [Hawaii Administrative Rules] § 3–120–2, a "responsive bidder" is defined as "a person who has submitted a bid or offer which conforms in all

material respects to the invitation for bids or request for proposals." In contrast, a "responsible bidder" is "a person who has the capability in all respects to perform fully the contract requirements, and the integrity and reliability which will assure good faith performance."

(Footnote omitted.)

. . . .

Accordingly, these definitions[3] are consistent with the above-cited cases and support the conclusion that *responsibility under Chapter 103D may be determined at any time up to the award of the contract.*

Based on all of these considerations, the Hearings Officer finds and concludes that *[Arakaki] was entitled to present the statement to [DAGS] for its consideration following the opening of the bids and up to the time of the award.*

(Emphases added).

Pursuant to his FOF and COL, the Hearings Officer entered the following decision:

Based on the foregoing, a fair and efficient resolution of this matter would consist of [DAGS's] reconsideration of [Arakaki's] bid, including the statement requested in the specifications, *along with any other factor deemed appropriate by [DAGS.]* for the purpose of determining [Arakaki's] responsibility or non-responsibility. Notwithstanding that, Chapter 103D, expressly limits the remedies available prior to an award:

**§ 103D–706. Remedies prior to an award.**

If prior to award it is determined that a solicitation or proposed award of a contract is in violation of the law, then the solicitation or proposed award shall be:

(1) Canceled; or

(2) Revised to comply with the law.

Accordingly, it is hereby ordered that the solicitation for [DAGS's] Job No. 12–16–0323 is *canceled.*

(Footnotes omitted.) (Bold emphasis in original.) (Underscored emphases added.) In a footnote, the Hearings Officer observed:

In this regard [referring to "any other factor deemed appropriate by DAGS"], the Hearings Officer notes that other factors may include those considerations alluded to in [DAGS's] letter to [Arakaki] dated September 13, 1996 (Stipulated Exhibit "F"). In that letter, [DAGS] stated among other things: "Your additional comments on the validity of our technical specifica-

3. *See supra* note 2.

tions are without merit. You should have addressed and resolved them according to the above sections before submitting your bid. This provides further evidence of your nonresponsibility as a bidder."

Arakaki's timely appeal followed.

## II. *STANDARD OF REVIEW*

The standard by which this court reviews the decisions of a hearings officer is governed by HRS § 103D–710(e) (1993), which provides:

(e) Upon review of the record the court may affirm the decision of the hearings officer issued pursuant to [HRS] section 103D–709 or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if substantial rights may have been prejudiced because the administrative findings, conclusions, decisions or orders are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority or jurisdiction of the chief procurement officer or head of the purchasing agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Furthermore,

conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects under subsection (3); findings of fact under subsection (5); and the Hearings Officer's exercise of discretion under subsection (6). Accordingly, a reviewing court will reverse a Hearings Officer's finding of fact if it concludes that such . . . finding is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. On the other hand, the Hearings Officer's conclusions of law are freely reviewable.

*In re Carl Corp. v. State of Hawai'i Dep't of Educ., Hawai'i State Library Sys.,* 85 Ha-

wai'i 431, 446–47, 946 P.2d 1, 16–17 (1997) (emphases added) (citation and brackets omitted).

■ Because HRS § 103D–706 offers the hearings officer a choice of remedies, the selection of an appropriate remedy is a matter within the hearings officer's discretion.

> Discretion denotes the absence of a hard and fast rule. When invoked as a guide to judicial action it means a sound discretion, that is to say, a discretion exercised not arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result.

*Booker v. Midpac Lumber Co.*, 65 Haw. 166, 172, 649 P.2d 376, 380 (1982) (citations and internal brackets omitted). A hearings officer abuses his or her discretion when he or she "clearly exceeds bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party." *Craft v. Peebles*, 78 Hawai'i 287, 301, 893 P.2d 138, 152 (1995) (citation and internal quotation marks omitted).

## III. *DISCUSSION*

In this appeal, our determination whether the Hearings Officer abused his discretion in cancelling the solicitation must be guided by the purposes underlying the Procurement Code. *Kawamata Farms, Inc. v. United Agri Products*, 86 Hawai'i 214, 255, 948 P.2d 1055, 1096 (1997) (stating that appellate court's "foremost obligation is to ascertain and give effect to the intention of the legislature"). The legislative history of the Procurement Code reveals that:

> The purpose of this bill is to revise, strengthen, and clarify Hawaii's laws governing procurement of goods and services and construction of public works.
>
> Specifically, the bill establishes a new comprehensive code that will:
>
> (1) Provide for fair and equitable treatment of all persons dealing with the government procurement system;
>
> (2) Foster broad-based competition among vendors while ensuring accountability, fiscal responsibility, and efficiency in the procurement process; and

> (3) Increase public confidence in the integrity of the system.

*In re Carl*, 85 Hawai'i at 455–56, 946 P.2d at 25–26 (quoting Sen. Stand. Comm. Rep. No. S8–93, in 1993 Senate Journal, at 39).

■ In the instant case, the Hearings Officer's cancellation of the solicitation does not compel the purchasing agency to commence a second solicitation process; thus, reconsideration of Arakaki's bid, which presumably would include his qualification and experience list, is not assured. Moreover, the amount of Arakaki's bid—$349,825.00—and the fact that Arakaki's bid was the lowest bid, *see* FOF no. 3, has become publicly known by virtue of having been published in the Hearings Officer's FOF, COL, and Decision, which have also been included in the record on appeal. Consequently, if a second solicitation is commenced and Arakaki re-bids, he stands to forfeit his position as the lowest bidder because it is not inconceivable to expect that others with knowledge of Arakaki's original bid price will attempt to underbid him.

Although, under these circumstances, the Hearings Officer's selection of cancellation offends the legislative objective of providing for the "fair and equitable treatment of all persons dealing with the government procurement system," *In re Carl*, 85 Hawai'i at 455, 946 P.2d at 25 (citation omitted), we believe that the Hearings Officer recognized the importance of this legislative objective. In his decision, the Hearings Officer specifically stated that "a fair and efficient resolution of this matter would consist of [DAGS'] reconsideration of [Arakaki's] bid, including the statement requested in the specifications[.]" It appears, however, that the Hearings Officer believed that the choice of remedies prescribed by HRS § 103D–706 (*i.e.*, cancel or revise the solicitation) did not include what he believed would be a "fair and efficient resolution" as described above. Indeed, both parties concede that the Hearings Officer believed that HRS § 103D–706 did not authorize him to remand Arakaki's bid for reconsideration and that, therefore, the Hearings Officer canceled the solicitation.

As noted in the Hearings Officer's decision, HRS § 103D–706 provides that, prior to

award of the contract, where "a solicitation . . . is in violation of the law, then the solicitation . . . shall be . . . [r]evised to comply with the law." The parties do not dispute the Hearings Officer's determination that the solicitation was in violation of the law as a result of DAGS's erroneous denial of Arakaki's request to supplement his bid and the subsequent rejection of the bid as nonresponsive. Having determined that cancellation under the circumstances of this case offends the legislative objectives of the Procurement Code, the dispositive question is whether the alternative remedy to "revise" the solicitation to comply with the law includes remand and reconsideration as contemplated by the Hearings Officer.

▮ DAGS argues that " '[r]evise' does not mean remand and reconsider." Because "revise" is not statutorily defined, we look to its plain meaning. *Kawamata Farms*, 86 Hawaiʻi at 255, 948 P.2d at 1096 (stating "where the language of the statute is plain and unambiguous, our only duty is to give effect to its plain and obvious meaning."). According to Webster's Third New International Dictionary (1967), "revise" means "to correct errors." Thus, "revise" encompasses remedies that are required to correct the violations of law related to the solicitation. As such, the remedy in the instant case includes remanding Arakaki's bid for reconsideration after giving him an opportunity to supplement his bid with a qualification and experience list. Moreover, remanding the matter to DAGS for reconsideration is consistent with the legislative objective of providing fair and equitable treatment.

Although in *In re Carl* we dealt with remedies after the award of a contract under HRS § 103D–707, we squarely addressed the issue whether HRS § 103D–706 authorized the Hearings Officer to remand a bid for reconsideration where solicitation was in violation of the law. In that case, Carl Corporation (Carl), the unsuccessful bidder for the contract to provide automation and other services to the Hawaiʻi State Public Library

System, argued that it should have been awarded the contract because: (1) the proposal of the successful bidder, Dynix, Inc. (Dynix), aka Ameritech, was nonresponsive; and (2) Dynix was disqualified from bidding.[4] *In re Carl*, 85 Hawaiʻi at 449, 946 P.2d at 19. In discussing the remedies available under the Procurement Code, this court stated:

> Had the contract not been executed, the relief CARL seeks [that is, elimination of Dynix's proposal and award of the contract to CARL] would have been available. If the Hearings Officer had agreed with CARL, prior to the award of the contract, he could either have ordered the cancellation of the solicitation and precluded [Dynix] from submitting a proposal on any subsequent solicitation based on the same specifications or *have revised the solicitation to comply with law by eliminating [Dynix's] proposal from consideration,* which would have had the same effect.

*Id.* at 450, 946 P.2d at 20 (emphases added). In a footnote, the court further explained:

> Even if he disagreed with CARL's contentions regarding the disqualification of [Dynix's] proposal, the Hearings Officer's conclusion that the evaluation of the proposals was not in compliance with the Code would have required him to cancel the solicitation or revise it to comply with law, had the contract not been executed. *In that case, his remand for a proper evaluation would have been appropriate.*

*Id.* at 450 n. 18, 946 P.2d at 20 n. 18 (emphasis added). We, therefore, hold that the term "revise" in the context of HRS § 103D–706 includes remand and reconsideration. Because cancellation under the circumstances of this case is contrary to the purposes underlying the Procurement Code, we further hold that the Hearings Officer's selection of cancellation of the solicitation was an abuse of discretion.

## IV. CONCLUSION

For the reasons discussed above, we vacate that portion of the Hearings Officer's

---

4. Carl argued that because Dynix prepared the specifications for the Request For Proposals, Dynix was disqualified from bidding based on HRS § 103D–405(d) (1993), which provides:

Outside contractors may be utilized to prepare specifications and work statements in the development of a solicitation. Contractors paid for those services *shall be precluded from bidding on or receiving a contract* when they participated in any in the development of the solicitation package or any resulting contract. (Emphasis added.)

Decision cancelling the solicitation and remand this case to the Hearings Officer with instructions to implement his "fair and efficient resolution of this matter," that is, to: (1) set aside DAGS' rejection of Arakaki's bid; and (2) remand to DAGS for "reconsideration of [Arakaki's] bid, including the statement requested in the specifications, along with any other factors deemed appropriate by [DAGS]."