**Electronically Filed
Intermediate Court of Appeals
CAAP-11-0000756
17-OCT-2012
09:41 AM**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

BOMBARDIER TRANSPORTATION (HOLDINGS) USA INC.,
Plaintiff-Appellant,
v.
DIRECTOR, DEPARTMENT OF BUDGET AND FISCAL SERVICES,
CITY AND COUNTY OF HONOLULU; ANSALDO HONOLULU JV;
DEPARTMENT OF COMMERCE AND CONSUMER AFFAIRS, STATE OF HAWAI'I,
Defendants-Appellees,
and
JOHN DOES 1-10, JANE DOES 1-10,
DOE GOVERNMENTAL UNITS 1-10, AND DOE ENTITIES 1-10,
Defendants

NO. CAAP-11-0000756

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 11-1-1778)

OCTOBER 17, 2012

FOLEY, PRESIDING JUDGE, FUJISE AND GINOZA, JJ.

OPINION OF THE COURT BY FOLEY, J.

In this secondary administrative appeal arising out of
a dispute under the State of Hawaii's (State) Procurement Code,

Bombardier Transportation (Holdings) USA Inc. (Bombardier) appeals from the September 23, 2011 Judgment (Judgment) and September 16, 2011 "Order Denying Bombardier Transportation (Holdings) USA, Inc's Appeal And Affirming The August 5, 2011 Findings Of Fact, Conclusions Of Law, And Decision Of The Department Of Commerce and Consumer Affairs Office of Administrative Hearings," (Order) both entered in the Circuit Court of the First Circuit[1] (circuit court). The circuit court entered judgment in favor of Director, Department of Budget and Fiscal Services, City and County of Honolulu (the City) and Ansaldo Honolulu JV (Ansaldo).

On appeal, Bombardier contends the circuit court erred in affirming the Administrative Hearings Officer's (hearings officer) determination that:

(1) Bombardier's protest was untimely;

(2) Bombardier's proposal was properly rejected as conditional;

(3) Bombardier's protest arguments would undermine the integrity of the procurement process; and

(4) the City satisfied its duty to conduct meaningful discussions.

## I. BACKGROUND

### A. RFP, Addenda, Proposal and BAFO Submissions

The following facts are undisputed. On April 9, 2009, the City issued Part 1 of its Request for Proposals (RFP) for the Core Systems Design-Build-Operate-Maintain Contract for the Honolulu High-Capacity Transit Corridor Project. The purpose of RFP Part 1 was to select priority-listed offerors deemed qualified to proceed with Part 2, and the City selected three priority-listed offerors: Ansaldo, Bombardier, and Sumitomo Corporation of America (Sumitomo).

---

[1] The Honorable Rhonda A. Nishimura presided.

On August 17, 2009, the City issued RFP Part 2, including a provision addressing the City's liability under the proposed contract. In the following months, the City received several Requests for Information (RFIs) from Bombardier and Sumitomo about this provision, and as a result of these RFIs, the City issued Addendum No. 26 to the RFP on April 14, 2010. Addendum No. 26 deleted the original provision and replaced it with "Special and Management Provisions" (SP) Chapter 2 section 2.13, which read:

> (a) The City's obligations under this Contract shall be limited to the payment for services under this Contract.
>
> (b) The CSC [Core System Contractor]'s liability to the City for damages arising out of Work performed under the Design-build component of the Contract shall be limited to the total Contract Value of the Design-build component of the Contract, provided that excluded from the limitation of liability will be any liability, including defense costs, for any type of damage or loss to the extent it is covered by proceeds of insurance required under this Contract. Further, this limitation of liability shall not apply with regard to fraud, criminal conduct, . . . [or] the CSC's indemnities set forth in this Contract, including but not limited to SP-2.14[.]

On May 6, 2010, Addendum No. 31 formally incorporated this change into RFP 2, with only minor wording differences that are not relevant.

On June 7, 2010, Bombardier submitted its RFP Part 2 Proposal to the City. The proposal contained the following clarification:

> 2. Clarification: Reference SP 2.13(b)
>
> Bombardier assumes that the City has inadvertently excluded Contractor's indemnities from the overall cap on liability of total Contract Value set forth in SP 2.13(b). As expressed in the RFP, such exclusion would defeat the purpose of the provision as it would mean effectively that there was no overall cap on liability. Bombardier is basing its proposal on the assumption that the following language in SP 2.13(b) is deleted: *"Contractor's indemnities set forth in the Contract, including but not limited to SP 2.14"*, and that the balance of the language in SP 13 [sic] remains as is.

After submitting the initial proposal, Bombardier participated in discussions with the City. During a September 22, 2010 meeting, Bombardier argued that the City should amend the language of SP-2.13 to eliminate the exception for indemnification liability and instead have a complete cap on potential liability. During a teleconference on October 27, 2010, the City warned Bombardier that a conditional proposal could be deemed non-responsive and unacceptable.

After evaluating the initial proposals, the City issued a call for a best and final offer (BAFO) on November 4, 2010 (BAFO #1). The City also issued Addendum 41, which replaced SP-2.13(b), making minor wording changes but retaining the language excluding indemnification claims from the liability cap.

On November 15, 2010, Bombardier submitted confidential questions concerning the indemnification terms. Bombardier asked that the SP-2.13(b) language be deleted or revised because the terms were "unprecedented in [Bombardier's] significant experience of global contracting in the rail industry" and "not reasonable." The City declined to respond, informing Bombardier that no response to confidential requests for clarifications would be forthcoming.

On December 8, 2010, the City issued Addendum No. 44 to the RFP, addressing questions regarding SP sections 2.13 and 2.14. The questions asked the City to consider changing the language, and the City responded, "[n]o change will be made."

On January 18, 2011, Bombardier submitted its BAFO #1. The price proposal portion contained the following language:

> 2. Clarification: Reference SP-2.13(b)
>
> We note that the City has excluded Contractor's indemnities from the overall cap on liability of total Contract Value set forth in SP 2.13(b). As expressed in Addendum #44, Question/Response #67, such exclusion would serve to defeat the purpose of the provision as it would mean effectively that there was no overall cap on liability. Bombardier is basing its proposal on the assumption that the following language in SP 13(b) is deleted: "Contractor's indemnities set forth in the Contract, including but not limited to SP

2.14", and that the balance of the language in SP 13 [sic] remains as is.

Before reviewing the price proposal portions of the responses to the call for BAFO #1, the City decided to call for another BAFO, issuing the second call on February 9, 2011 (BAFO #2). On February 24, 2011, Bombardier submitted its BAFO #2. The price proposal portion contained the same language as that contained in its BAFO #1.

On March 14, 2011, the City's Evaluation Committee recommended the award be made to Ansaldo, and on March 21, 2011, the City advised Bombardier its BAFO #2 was rejected as non-responsive because it was an impermissible conditional proposal that did not conform in all material respects to the RFP. That same day, the City awarded the contract to Ansaldo.

**B.    Protest and Administrative Hearing**

Bombardier protested the award to Ansaldo by a letter to the City dated April 11, 2011. As grounds for the protest, the letter asserted, "[a]s a result of the City's failure to engage in 'meaningful discussions,' the City wrongly rejected Bombardier's BAFO #2 for containing an allegedly conditional term." The City, through the Deputy Director for the Department of Budget and Fiscal Services, denied Bombardier's protest on June 23, 2011.

On June 29, 2011, Bombardier appealed the denial by filing its Request for Hearing with the Office of Administrative Hearings (OAH) of the Department of Commerce and Consumer Affairs (DCCA). On July 19, 2011, the hearings officer heard oral arguments and, at the conclusion, orally granted the City's Motion for Summary Judgment, granted Ansaldo's Motion to Dismiss for Lack of Jurisdiction or, in the Alternative, Motion for Summary Judgment, and denied Bombardier's Motion for Summary Judgment. The hearings officer issued the "Findings of Fact,

Conclusions of Law and Decision" (OAH Decision) against Bombardier on August 5, 2011.

On August 15, 2011, Bombardier filed its Notice of Appeal with the circuit court. On September 16, 2011, the circuit court entered its Order affirming the OAH Decision "in its entirety" and entered its Judgment on September 23, 2011. On October 13, 2011, Bombardier filed the instant notice of appeal from the circuit court's Order and Judgment.

## II. STANDARDS OF REVIEW

"Review of a decision made by the circuit court upon its review of an agency's decision is a secondary appeal. In an appeal from a circuit court's review of an administrative decision the appellate court will utilize identical standards applied by the circuit court." Hawaii Teamsters & Allied Workers, Local 996 v. Dep't of Labor & Indus. Relations, 110 Hawai'i 259, 265, 132 P.3d 368, 374 (2006) (internal quotation marks and citations omitted).

Hawaii Revised Statutes (HRS) § 103D-710(e) (Supp. 2011) governs when reviewing the decisions of a hearings officer based upon the Hawai'i Public Procurement Code. Southern Foods Group., L.P. v. Dep't of Educ., 89 Hawai'i 443, 452, 974 P.2d 1033, 1042 (1999). HRS § 103D-710(e) provides that the court may

> affirm the decision of the hearings officer issued pursuant to section 103D-709 or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if substantial rights may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the statutory authority or jurisdiction of the chief procurement officer or head of the purchasing agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Affected by other error of law;
>
> (5) Clearly erroneous in view of the reliable, probative, and substantial evidence

on the whole record; or

> (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion; provided that if an application for judicial review is not resolved by the thirtieth day from the filing of the application, the court shall lose jurisdiction and the decision of the hearings officer shall not be disturbed.

"[C]onclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects [are reviewable] under subsection (3); findings of fact [are reviewable] under subsection (5); and [the Hearings Officer's] exercise of discretion [is reviewable] under subsection (6)." Carl Corp. v. Dep't of Educ., 93 Hawai'i 155, 162, 997 P.2d 567, 574 (2000) (brackets in original).

> [A]dministrative findings of fact are reviewed under the clearly erroneous standard, which requires [the appellate] court to sustain its findings "unless the court is left with a firm and definite conviction that a mistake has been made." Bumanglag v. Oahu Sugar Co., Ltd., 78 Hawai'i 275, 279, 892 P.2d 468, 472 (1995) (block format and citation omitted). Administrative conclusions of law, however, are reviewed under the de novo standard inasmuch as they are "not binding on an appellate court." Id. (block format and citation omitted). "Where both mixed questions of fact and law are presented, deference will be given to the agency's expertise and experience in the particular field and the court should not substitute its own judgment for that of the agency." Dole Hawaii Div.-Castle & Cooke, Inc. v. Ramil, 71 Haw. 419, 424, 794 P.2d 1115, 1118 (1990). "To be granted deference, however, the agency's decision must be consistent with the legislative purpose." Camara v. Agsalud, 67 Haw. 212, 216, 685 P.2d 794, 797 (1984).

Peroutka v. Cronin, 117 Hawai'i 323, 326, 179 P.3d 1050, 1053 (2008).

### III. DISCUSSION

1. **The circuit court erred in affirming the hearings officer's conclusion that Bombardier's protest was untimely.**

The City and Ansaldo contend Bombardier's protest is time-barred because it is based solely on Bombardier's dispute with the RFP contents. HRS § 103D-701(a) (Supp. 2011) provides that a protest as to the contents of the solicitation must be raised before the date set for the receipt of offers, stating:

>(a) Any actual or prospective bidder, offeror, or contractor who is aggrieved in connection with the solicitation or award of a contract may protest to the chief procurement officer or a designee as specified in the solicitation. Except as provided in sections 103D-303 and 103D-304, a protest shall be submitted in writing within five working days after the aggrieved person knows or should have known of the facts giving rise thereto; . . . provided further that no protest based upon the content of the solicitation shall be considered unless it is submitted in writing prior to the date set for the receipt of offers.

HRS § 103D-701(a).

The hearings officer determined that part of Bombardier's protest was to the language used in SP-2.13 of the RFP and concluded, "[t]o the extent that Bombardier's protest concerns the language to be used to accurately reflect what Bombardier asserts is, or should be, the City's actual intent, by any measure Bombardier's protest submitted on April 11, 2011 was untimely under HRS § 103D-701(a)."

Bombardier contends its protest concerned the City's actions in rejecting its proposal, not the RFP contents, and we agree. In its April 11, 2011 protest letter, under a section titled "SUMMARY OF REASONS FOR PROTEST OF AWARD," Bombardier asserted, "[a]s a result of the City's failure to engage in 'meaningful discussions,' the City wrongly rejected Bombardier's BAFO #2 for containing an allegedly conditional term." Nowhere in the letter does Bombardier seek revision of any solicitation terms. Therefore, we hold that the circuit court erred in affirming the hearings officer's conclusion that Bombardier's protest was untimely. Because other grounds exist for affirming the circuit court's Order and Judgment, the error was harmless.

> 2. **The circuit court correctly affirmed the hearings officer's determination that the City satisfied its duty to conduct meaningful discussions.**

HRS § 103D-303(f) (Supp. 2011) states, "Discussions may be conducted with responsible offerors . . . for the purpose of clarification to assure full understanding of, and responsiveness to, the solicitation requirements." The implementing rules

further provide, "'[d]iscussion' means an exchange of information to promote understanding of a state agency's requirements and offeror's proposal and to facilitate arriving at a contract that will be the best value to the State." Hawaii Administrative Rules (HAR) § 3-122-1.

Because there is no Hawai'i case law or administrative decision guidance specifically addressing the methods of conducting discussions, Bombardier relies on the federal government's treatment of agency obligations. Under federal Comptroller General decisions, once an agency elects to conduct discussions, the agency must ensure the discussions are "meaningful": "that is, an agency is required to point out weaknesses or deficiencies in a proposal as specifically as practical considerations permit so that the agency leads the offeror into areas of its proposal which require amplification or correction." Professional Services Group, Inc., B-274289, B-274289.2, 97-1 CPD P 54, 1996 WL 776943 (Comp. Gen.).

Hawai'i courts have used federal precedent to guide the interpretation of State laws, however, such consultation is solely to aid interpretation and only makes sense where the statutory language is the same or similar in all relevant respects. Del Monte Fresh Produce (Hawaii), Inc. v. ILWU, 112 Hawai'i 489, 507 n.33, 146 P.3d 1066, 1084 n.33 (2006). Hawaii's Procurement Code was based in large part not on the federal regulations, but rather on the American Bar Association's Model Procurement Code. In re Carl Corp. v. State, Dep't of Educ., 85 Hawai'i 431, 448, 946 P.2d 1, 18 (1997) (citing S. Stand. Comm. Rep. No. S8-93, in 1993 Senate Journal, at 39). An evaluation of the Federal Acquisition Regulation (FAR) reveals that the FAR provisions regarding discussions are more detailed than the corresponding State law provisions. FAR § 15.306(d) specifically requires discussions to be tailored to each offeror's proposal

and requires, at a minimum, that the contracting officer indicate to or discuss with each offeror "deficiencies, weaknesses, and adverse past performance information." Hawaii's Procurement Code and the Hawaiʻi Administrative Rules contain no such provisions. HRS § 103D-303(f); HAR § 3-122-53.

Even under the federal decisions' requirement for "meaningful" discussions, the hearings officer could reasonably conclude that the City satisfied this requirement based on the facts of this case. In the OAH Decision, the hearings officer cited to Pauli & Griffin, B-234191, 89-1 CPD P 473, 1989 WL 240786 (Comp. Gen.), which states that an agency's duty to discuss can be satisfied where it leads the offeror into the areas of its proposal requiring correction. See also Violet Dock Port, Inc., B-231857, B-231857.2, 89-1 CPD P 292, 1989 WL 240511 (Comp. Gen.). In Pauli, the agency alerted the protester of a deficiency by issuing an amendment to the RFP. Pauli, 1989 WL 240786 at 4. The case notes that while simply amending the RFP does not necessarily constitute meaningful discussion, the discussion was found sufficient because the protester responded to the amendment by revising its documents, showing that the amendment had in fact led the protester to the deficiency and that the agency had imparted "sufficient information to the offeror to afford it a fair and reasonable opportunity" to correct. Id. at 4

In this case, the City issued Addenda Nos. 26, 31, 41, and 44 specifically addressing questions about the indemnification provisions and confirming that no change would be made. Bombardier revised its proposal language after these amendments. The initial proposal from June 7, 2010 stated, "Bombardier assumes the City has inadvertently excluded Contractor's indemnities," but Bombardier's BAFO #1 and #2 proposals stated: "We note that the City has excluded

Contractor's indemnities[.]" The BAFOs also specifically cited Addendum No. 44. These revisions, made in response to the City's addenda, show that by the time Bombardier submitted its BAFOs, the City had in fact made clear to Bombardier that it intended to exclude indemnities from the overall cap on liabilities and would not accept any change to this provision. Although Bombardier alleges the City made a misleading statement during the September 22, 2010 discussion about its intent regarding SP-2.13, Bombardier's revision shows the City's subsequent addenda cleared any misunderstanding. Additionally, section 2.3(C) of the Instructions to Priority-Listed Offerors (ITPLO) that was incorporated into the RFP, cautioned offerors against relying on any statements other than those made in the RFP or in formal written Addenda.

> The federal decisions also recognize that
>
> agencies are not required to notify offerors of deficiencies remaining in their proposals, or first appearing in a BAFO, or to conduct successive rounds of discussions until omissions are corrected. Consequently, an offeror should not anticipate a further opportunity to revise it [sic] proposal after submission of a BAFO.

Violet Dock Port, 1989 WL 240511 at 6 (citation omitted). Likewise, HAR § 3-122-54 is clear that "[b]est and final offers shall be submitted only once," and "no discussion of or changes in the best and final offers shall be allowed prior to award" unless the agency "determines in writing that it is in the State's best interest to conduct additional discussions or change the State's requirements by an addendum distributed only to priority-listed offerors and require another submission of best and final offers."

Here, the City issued the four addenda before Bombardier submitted its BAFO #1. Bombardier should not have anticipated a further opportunity to revise after submitting its BAFOs. To the extent that Bombardier's BAFOs #1 and #2 remained

conditioned on deleting language from SP-2.13, even after the City repeatedly reiterated its intent to make no changes to SP-2.13, we can only attribute it to Bombardier's unwillingness to accept uncapped indemnification liability. Although it may have been preferable if the City had provided Bombardier with a letter demanding elimination of the unacceptable language, as Bombardier suggests, nothing in the Procurement Code or the implementing rules mandates issuance of such a demand, and we cannot regard as unreasonable the City's apparent assessment that its duty to conduct discussions was satisfied and that further affirmative efforts to alert Bombardier were not required.

Bombardier also contends the hearings officer failed to satisfy the affirmative duty under HRS § 103D-709 (Supp. 2011) to ensure that the City's actions conformed to the RFP solicitation. Section 6.3 of the RFP states that the purpose of discussions include "A) Advising the Priority-Listed Offerors of Weaknesses, significant Weaknesses and/or Deficiencies in their Proposals . . . [and/or] C) Resolving any suspected mistakes by calling them to the attention of the Priority-Listed Offerors as specifically as possible[.]" It is true that the hearings officer made no mention of this RFP provision in the OAH Decision. Nevertheless, RFP section 6.3 closely mirrors the language of federal decisions and rules on the "meaningful discussions" requirement. FAR § 15.306(d)(3) ("At a minimum, the contracting officer must . . . indicate to, or discuss with, each offeror still being considered for award, deficiencies, significant weaknesses, and adverse past performance information[.]"); Professional Services Group, 1996 WL 776943 at 2 ("[A]n agency is required to point out weaknesses or deficiencies in a proposal as specifically as practical considerations permit[.]"). Not only did the City satisfy standards under federal law that are more stringent than Hawaii's

Procurement Code, the City satisfied its duty under the RFP terms as well.

3.     **The circuit court correctly affirmed the hearings officer's determination that Bombardier's proposal was properly rejected as conditional.**

HAR § 3-122-6 states, "[a]ny offer which is conditioned upon receiving a contract other than as provided for in the solicitation shall be deemed nonresponsive and not acceptable." HAR § 3-122-97 states in pertinent part: "(2) A proposal shall be rejected for reasons including but not limited to: (B) The proposal, after any opportunity has passed for modification or clarification, fails to meet the announced requirements of the agency in some material respect[.]" Section 2.5 of the ITPLO states,

> Proposals may be considered non-responsive and may be rejected for, but not limited to, any of the following reasons: A) . . . [I]f any part thereof is deleted from the Proposal; B) If the Proposal is illegible or contains any omission, erasures, alterations, or items not called for in the Call for BAFOs or contains unauthorized additions, conditional Proposals, or other unacceptable irregularities[.]

As a preliminary matter, the City and Ansaldo's contention that Bombardier's argument based on HAR § 3-122-97 was not raised in its protest and thus should be rejected for lack of jurisdiction is unavailing. In its protest letter, Bombardier argued the City's discussions "must ensure competitors are specifically informed of material defects in their proposals and must be given an opportunity to correct the deficiency." Although the protest letter did not specifically cite to HAR § 3-122-97, Bombardier's argument under HAR § 3-122-97 centers on this "opportunity to correct" concept. Therefore, the protest letter gave the City and Ansaldo clear notice of Bombardier's argument. "It is not necessary to plead under what particular law the recovery is sought." <u>Hall v. Kim</u>, 53 Haw.

215, 221, 491 P.2d 541, 545 (1971) (internal quotation marks and citations omitted).

The Evaluation Committee unanimously decided Bombardier's BAFO #2 was non-responsive because it did not conform in all material respects to the RFP and because the proposal was conditional, in violation of HAR § 3-122-6 and the ITPLO. The hearings officer also found Bombardier's proposal non-responsive and conditional. As discussed above, the record shows Bombardier's initial proposal and its BAFOs #1 and #2 were conditioned on deleting language from SP-2.13, and therefore, we conclude the circuit court did not err in affirming the hearing officer's finding that the proposal was conditional.

At the DCCA hearing, Bombardier conceded the City cannot accept a conditional proposal, stating, "[w]e agree no Government agency may accept a conditional proposal. The question is what do they do when they get a conditional proposal?" Bombardier contends that even if its proposal was conditional, it could be rejected only after the City has conducted meaningful discussions regarding the alleged conditional language and "after any opportunity has passed for modification or clarification." HAR § 3-122-97(b)(2)(B). As discussed above, we conclude the City satisfied its duty by issuing multiple addenda before the BAFO #1 submission deadline, putting Bombardier on notice that it risked rejection if it insisted on deleting or changing the RFP language. Moreover, we agree with the hearings officer's determination that Bombardier had substantial opportunity to modify or clarify its proposal in the time between submitting its initial response, participating in discussions and submitting questions to the City, and submitting BAFOs #1 and #2. In fact, Bombardier did modify BAFOs #1 and #2 to incorporate a reference to Addendum No. 44, but it chose to retain the language conditioning its proposal on the

City deleting language from SP-2.13. It was reasonable for the City to decide not to conduct additional discussions or permit revision of the indemnification provisions at that point. Therefore, rejecting Bombardier's proposal as a conditional proposal was proper.

4.    The circuit court correctly affirmed the hearings officer's conclusion that Bombardier's protest arguments would undermine the integrity of the procurement process.

Bombardier also challenges the hearings officer's conclusion that Bombardier's protest would "undermine the integrity of the procurement process" because it would allow Bombardier to "submit a [lower priced] conditional proposal, find out the prices of the other offerors, and then decide if it wanted to waive its objection to the language in SP-2.13 or negotiate a change . . . to obtain award." Bombardier argues it learned of the competing prices only because the City mishandled the procurement by disclosing prices with the notice of contract award and on the same day the City informed Bombardier it was rejecting Bombardier's BAFO #2. Bombardier contends the City should have instead issued a written, time-limited demand to Bombardier for correction of the alleged conditional proposal before rejection and maintained confidentiality of proposal pricing until the time had passed for Bombardier to take corrective action.

As discussed above, the City had no obligation to issue such a written, time-limited demand, in light of its other communications with Bombardier. Furthermore, Hawaii's Procurement Code generally prohibits modification of a BAFO after the deadline for receipt. HAR § 3-122-54. Because Bombardier was not permitted to modify its BAFO at that point, it was not inappropriate for the City to release the prices at the same time it released the award and the rejection to Bombardier. Allowing

Bombardier to modify its proposal after the City had disclosed the pricing information would raise risks of unfairness, as Bombardier itself acknowledges.

As Bombardier notes, our determination in this appeal "must be guided by the purposes underlying the Procurement Code." Arakaki v. Dep't of Accounting and General Serv., 87 Hawai'i 147, 150, 952 P.2d 1210, 1213 (1998). The Hawai'i Supreme Court explained the purpose of the Procurement Code is to: "(1) Provide for fair and equitable treatment[;] (2) [f]oster broad-based competition among vendors while ensuring accountability, fiscal responsibility, and efficiency in the procurement process; and (3) [i]ncrease public confidence in the integrity of the system." Carl Corp., 85 Hawai'i at 456, 946 P.2d at 26 (citing S. Stand. Comm. Rep. No. S8-93, in 1993 Senate Journal, at 39). Bombardier contends the procedure the City followed in this case fails to protect the public interest.

We believe the hearings officer properly considered the legislative purpose in his decision. While competition is an important interest and may have been further promoted by allowing Bombardier another opportunity to withdraw its language, ensuring efficiency and accountability in the procurement process are equally important. In his decision, the hearings officer considered the City's efforts and determined they were more than sufficient to ensure competition and compliance by large sophisticated business entities such as Bombardier. According deference to the decision of an administrative body acting within its sphere of expertise, see Southern Foods Group, 89 Hawai'i at 453, 974 P.2d at 1043, we conclude the circuit court did not err in affirming the OAH Decision against Bombardier.

## IV.   CONCLUSION

The September 23, 2011 Judgment and September 16, 2011 "Order Denying Bombardier Transportation (Holdings) USA, Inc's Appeal And Affirming The August 5, 2011 Findings Of Fact, Conclusions Of Law, And Decision Of The Department Of Commerce and Consumer Affairs Office of Administrative Hearings," both entered in the Circuit Court of the First Circuit are affirmed.


On the briefs:

Terry E. Thomason
Corianne W. Lau
Jessica Wong Lavarias
(Alston Hunt Floyd & Ing)
for Plaintiff-Appellant
Bombardier Transportation
(Holdings) USA, Inc.

David J. Minkin
Kenneth J. Mansfield
Laura S. Lucas
(McCorriston Miller
Mukai MacKinnon)
for Defendant-Appellee
Ansaldo Honolulu JV.

Bert T. Kobayashi, Jr.
Joseph A. Stewart
Jonathan S. Moore
Michael F. Albanese
(Kobayashi, Sugita & Goda)
Special Deputies Corporation Counsel
and
Amy R. Kondo
Nicole R. Chapman
Deputies Corporation Counsel
City and County of Honolulu
for Defendant-Appellee
Director, Department of Budget and
Fiscal Services, City and
County of Honolulu.

17