FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
CAAP-14-0001160
21-MAR-2016
08:01 AM

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

NO. CAAP-14-0001160
CERTIFIED CONSTRUCTION, INC., Petitioner-Appellant,
v.
NANCY CRAWFORD, as Director of the Department of
Finance, County of Hawai'i, Respondent-Appellee,
(CIVIL NO. 14-1-0303)

AND

NO. CAAP-14-0001190
In the matter of CERTIFIED CONSTRUCTION, INC.,
Petitioner-Appellant/Appellee,
v.
NANCY CRAWFORD, as Director of the Department
of Finance, County of Hawai'i,
Respondent-Appellee/Appellant
(CIVIL NO. 14-1-0200)

NOS. CAAP-14-0001160 AND CAAP-14-0001190

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT

MARCH 21, 2016

REIFURTH, and GINOZA, JJ.
WITH FOLEY, PRESIDING JUDGE, DISSENTING SEPARATELY

OPINION OF THE COURT BY GINOZA, J.

In this case, we address consolidated appeals related to a bid protest by Petitioner-Appellant/Appellee Certified Construction, Inc. (**CCI**) for a County of Hawai'i public works project.

In appellate case no. CAAP-14-0001190, Respondent-Appellee/Appellant Nancy Crawford, as Director of the Department of Finance, County of Hawai'i (**County**) appeals from a Final Judgment entered by the Circuit Court of the Third Circuit (**Circuit Court**)[1] pursuant to an order entered on June 16, 2014 (**6/16/14 Order**), which reversed a "Hearings Officer's Findings of Fact, Conclusions of Law and Decision," entered on May 8, 2014 (**5/8/14 Hearings Officer Decision**). In the 5/8/14 Hearings Officer Decision, the Hearings Officer with the Department of Commerce and Consumer Affairs (**DCCA**)[2] dismissed this case based on a determination that CCI's protest was untimely and that the Hearings Officer therefore did not have jurisdiction to hear the matter. The Circuit Court reversed, ruling instead that CCI's protest was timely, and therefore the court remanded the case to the Hearings Officer.

In the County's points of error in CAAP-14-0001190, it contends that the Circuit Court: (1) erroneously ruled that the protest filed by CCI was timely and that the Hearings Officer had jurisdiction to review the protest; and (2) erred in reversing the Hearings Officer's ruling that the bid solicitation documents for the project did not require the listing of a C-44 licensed sheet metal contractor.

In appellate case no. CAAP-14-0001160, CCI appeals with regard to an order by the Circuit Court filed on September 19, 2014 (**9/19/14 Order**), which affirmed decisions that had been

_____

[1] The Honorable Glenn S. Hara presided.

[2] Administrative Hearings Officer Sheryl Lee A. Nagata issued the 5/8/14 Hearings Officer Decision.

2

entered by the Hearings Officer[3] during the remand from the Circuit Court.

In CCI's points of error for its appeal in CAAP-14-0001160, it contends that the Circuit Court erred in affirming the Hearings Officer because the Hearings Officer incorrectly concluded that: (1) there is no jurisdiction in this matter to consider CCI's claim that the County must defer to the opinion of the Contractors Licensing Board or to consider the Contractors Licensing Board's opinion; (2) CCI cannot utilize the Contractors Licensing Board's opinion to determine an issue related to a gooseneck hood ventilator; (3) the County did not agree to defer to a ruling of the Contractors Licensing Board; and (4) any assertion by CCI that the installation of the ventilators was incidental and supplemental to its roofing work is an admission that installation of the ventilators was not covered by CCI's C-42 license.

For the reasons discussed below, we conclude that CCI's bid protest was untimely under Hawaii Revised Statutes (**HRS**) § 103D-701(a) (2012) and therefore the Hearings Officer did not have jurisdiction to hear this matter.

## I.  BACKGROUND

On December 24, 2013, the County, through its Director of the Department of Public Works, published a "Proposal and Specifications for Reroofing for Fire Maintenance Shop & Fire Dispatch/Warehouse Job No. B-4190" (**Bid Solicitation**). The Bid Solicitation called for "SEALED BIDS for furnishing all tools, equipment, materials and labor necessary for the construction of 'REROOFING FOR FIRE MAINTENANCE SHOP & FIRE DISPATCH/WAREHOUSE,' Job No. B-4190, South Hilo, Hawaiʻi[.]" Sealed bids were to be accepted until February 6, 2014. The Bid Solicitation specifies that "[t]o be eligible to submit a bid, the Bidder must possess a valid State of Hawaiʻi, General Contractor's License 'B'. **See**

---

[3]  Senior Hearings Officer David H. Karlen presided during the remand from the Circuit Court.

3

**Special Notice to Bidders for additional licensing requirements."** (Emphasis in original.)

The "Special Notice to Bidders" (**Special Notice to Bidders**) was attached to the Bid Solicitation and states in part:

> Each of the following specialty contractor classifications listed in the table below have been determined by the County of Hawai'i as qualified to perform all of the work on this project based on the project's scope and the County's understanding of the State's licensing requirements and specialty contractor classifications' scopes of work. By way of the minimum licensing requirement stated for this project, no additional specialty contractor classifications are required to perform the work; however, the Bidder may list additional licensed subcontractors at its discretion.

Immediately below this statement is a table for "Specialty Contractor Classification & Scope of Work" which lists "C-33 Painting and decorating contractor," "C-44 Sheet metal contractor," and "C-48 Structural steel contractor." (Emphasis added.) Below the listing of specialty contractor classifications is a section titled "SPECIAL INSTRUCTIONS TO BIDDERS REGARDING SPECIALTY CONTRACTOR CLASSIFICATIONS AND REGARDING JOINT CONTRACTORS & SUBCONTRACTORS[,]" (**Special Instructions**) which provides in pertinent part:

> 1) Bidder shall be intimately familiar with the scopes of work each specialty contractor classification is licensed to perform under Hawai'i Administrative Rules § 16-77, the scope of work established for this project, and how the specialty contractor classifications' licenses apply in the proper execution and fulfillment of the project's scope of work.

> 2) In the circumstance where a specialty contractor classification license listed in the above table may be deemed unnecessary by a Bidder due to its intent to employ a plausible alternative means or method, the Bidder shall in its Proposal clearly state such intent and provide a detailed plan that meets with the satisfaction of the Director. The Director reserves the sole discretion and right to determine whether the Bidder's proposed justification for not listing the required license is acceptable.

> 3) In the circumstance where the Bidder is licensed in one or more specialty contractor classifications required of the project (whether automatically as a general engineering contractor "A", general building contractor "B", or outright) and it intends to perform all or some of the work of those classifications using its own workforce, the Bidder shall, in its Proposal,

4

list itself accordingly and in consideration of the balance of the instructions herein provided.

4) In the circumstance where a specialty contractor classification required in the above table may, in part or in whole (as applicable to the classification's scope of work), be within the licensed scope of work of another listed specialty contractor classification (e.g. overlapping scopes of licenses), the Bidder shall clearly delineate in its Proposal the extent of each subcontractor's responsibility on the project such that the Director can reasonably determine which classification is responsible for the corresponding scopes. Where a listed specialty contractor classification is rendered completely unnecessary due to overlapping scopes of work, the Bidder, in its Proposal, shall clearly state such as the reason for not listing that respective entity in its Proposal.

. . . .

6) The Bidder shall ensure that, in its Proposal, it provides the name of each person or firm to be engaged by the Bidder as a joint contractor, subcontractor, or lower-tier subcontractor in the performance of the contract and the nature and scope of the work to be performed by each in sufficient detail so as the Director can fully comprehend how all aspects of the project are intended to be executed. The Director reserves the right to request supplemental information as necessary for determining Bidder's responsibility and responsiveness.

(Emphasis added.) Immediately after the Special Instructions, the following is stated:

Anyone who disagrees with the determination in the above table shall submit their written objection to the Director identifying the specialty contractor classification(s) in question and the justification(s) for such position at least 10 consecutive calendar days prior to bid opening. If no such written objections are received by the Director prior to such date, it will be presumed that all Bidders and affected parties are in agreement with the listing set forth above. No other specialty license will be required unless noted otherwise in an addendum.

On January 14, 2014, Addendum No. 1 to the Bid Solicitation was issued which, among other things, updated the Special Notice to Bidders by adding "C-13 Electrical contractor" and "C-19 Asbestos contractor" to the list of specialty contractors in the table.

CCI submitted its bid to the County on February 5, 2014. On February 14, 2014, the Director of the Department of Public Works, Warren H.W. Lee (**Director Lee**), sent a written

notification to CCI that its bid was disqualified (**Disqualification Letter**). The Disqualification Letter explained:

> This project requires a C-44 – Sheet metal contractor, as noted in the Special Notice to Bidders and the Proposal sections of the bid specifications.
>
> Your Proposal fails to list a C-44 – Sheet metal subcontractor or to describe an alternate means and methods by which the work required of this project covered by this license class would otherwise be legally executed.
>
> In accordance with Hawai'i Administrative Rules §3-122-21(8) and Hawai'i Revised Statutes Section 103D-302(b), all subcontractors shall be listed in the bid proposal. Failure to list a subcontractor when required renders the bid nonresponsive, as noted in the Listing of Responsible Entities section of the Proposal and in the Special Notice to Bidders.

On February 19, 2014, CCI submitted a letter to the County protesting its disqualification and the rejection of its bid on the project (**Protest Letter**). CCI noted that its protest was being made pursuant to HRS § 103D-701. CCI's Protest Letter addressed two issues: first, CCI's contention that the sheet metal work could be performed by CCI under its C-42 (roofing) and C-44A (gutters) licenses; and second, CCI's position that the use of a sheet metal contractor with a C-44 license was not required by the bid documents.

On March 11, 2014, CCI wrote a letter to the Contractors Licensing Board requesting "a determination from the [Contractors Licensing] Board that the . . . project work may be performed under a C-42 and C-44A license and that a C-44 Sheet Metal License is not required."

On March 21, 2014, Director Lee informed CCI that he was upholding the disqualification of CCI's bid as being non-responsive and denying CCI's bid protest. This letter noted in part that CCI did not list any entity for, among others, the C-44 specialty license, and that it was required to do so or provide "a plausible alternative means/methods to accomplish the work." This letter further stated that:

> CCI attempts to cure its bid defect by arguing that a C-42 and C-44(a) license is sufficient to perform the work requested by the County.  The first time that this alternative was proposed was after bid opening and after CCI's bid was disqualified, as opposed to including the information within its bid documents.  Because CCI failed to properly propose the change in specialty licenses in its bid documents, it is therefore non-responsive.

On March 28, 2014, CCI submitted a Request For Hearing to the DCCA's Office of Administrative Hearings (**OAH**), challenging the County's determination that CCI's bid was non-responsive.  CCI's Request For Hearing asserts that CCI's bid was "responsive and conformed in all material respects" with the Bid Solicitation.

On April 8, 2014, the Contractors Licensing Board responded to CCI, addressing CCI's "inquiry regarding whether the reroofing for fire maintenance shop & fire dispatch/warehouse project work may be performed under a C-42 Roofing or C-44a Gutters contractor and that a C-44 Sheet metal contractor license is not required."  Based on the information provided to the Contractors Licensing Board, the letter sets out various, and alternative, contractor licenses believed to be needed for different parts of the project.  The letter further states, however, that "the above interpretation is for informational and explanatory purposes only.  It is not an official opinion or decision, and thus is not binding on the [Contractors Licensing] Board."

On April 17, 2014, a hearing was held before the Hearings Officer on CCI's protest, and subsequently, the 5/8/14 Hearings Officer Decision was issued.  After quoting HRS § 103D-701(a), the Hearings Officer made the following relevant conclusions:

> The Special Notice to Bidders did not specifically say that a C-44 specialty contractor license was required for the Project . . . .  However, the Special Notice to Bidders identified the C-44 specialty contractor license as one of the "minimum licensing requirement stated for the project, and no additional specialty contractor classifications are required to perform the work" and provided that it would be presumed that "all Bidders and affected parties are in agreement with the listing set forth above" if written

7

objections were not filed with the [County] ten consecutive days prior to the bid opening. Additionally, in allowing for the bidder to identify an alternate means or method to perform the work for a specialty classification license listed in the table, [the County] "reserved the sole discretion and right to determine whether the Bidder's proposed justification for not listing the required license is acceptable." Taken as a whole, the Hearings Officer finds that the Proposal required a C-44 specialty contractor license for the Project. Accordingly, . . . if [CCI] disagreed with [the County's] assessment that a C-44 specialty contractor license was required and believed that the work could be done with its C-42 and C-44A specialty contractor licenses in lieu of the required C-44 license, it was incumbent upon them to file a written objection ten calendar days prior to bid opening or at the latest, by February 5, 2014, the day before bid opening. Since [CCI] did not protest until February 19, 2014, the Hearings Officer concludes that [CCI's] protest was untimely and DCCA does not have jurisdiction to hear this matter.

The Hearings Officer would note that [CCI's] failure to object to listing a C-44 specialty contractor prior to bid opening might not have led to its bid being disqualified if it had not ignored the Proposal's instructions to state its intent to use an alternate method to do the work required by the C-44 specialty contractor license and provide a detailed plan so that [the County] could determine whether "the Bidder's proposed justification for not listing the required license is acceptable."

(Brackets omitted.) The Hearings Officer thus dismissed the case on jurisdictional grounds.

On May 16, 2014, CCI filed its notice of appeal to the Circuit Court from the 5/8/14 Hearings Officer Decision. On June 16, 2014, the Circuit Court issued its order granting CCI's application for judicial review and ruling that CCI's bid protest was timely. The Circuit Court thus reversed the 5/8/14 Hearings Officer Decision and remanded the matter to the Hearings Officer for further proceedings. The 6/16/14 Order states in pertinent part:

FINDINGS OF FACT

. . . .

2. The Proposal and Specifications for the Project (the "Solicitation"), including the Special Notice to Bidders and the Listing of Responsible Entities, did not require the use or listing of a contractor, joint contractor, or subcontractor having a C-44 specialty contractor classification (the "C-44 License");

3.    The Solicitation permitted the use of a contractor, joint contractor, or subcontractor having a specialty contractor classification other than the C-44 License to perform work included within the C-44 License's scope of work subject to review and approval by the Director of the Department of Public Works; and

4.    Petitioner-Appellant's protest of the disqualification of its bid by the Department of Public Works was based in part on the argument that it could properly perform certain Project work itself using its license having specialty contractor classifications C-42 (the "C-42 License") and C-44A (the "C-44 License"), and did not attack the contents of the Solicitation.

CONCLUSIONS OF LAW

1.    The Hearings Officer's finding that the Proposal or Solicitation required a C-44 specialty contractor license for the Project, is clearly erroneous;

2.    The Hearings Officer erred in concluding that Petitioner-Appellant's protest of the disqualification of its bid was required to be submitted ten calendar days prior to bid opening or no later than February 5, 2014;

3.    Petitioner-Appellant's protest of the disqualification of its bid was timely submitted on February 19, 2014; and

4.    As a timely protest, the Hearings Officer and the Department of Commerce and Consumer Affairs of the State of Hawaii has jurisdiction to review Petitioner-Appellant's protest of the disqualification of its bid.

Based on the foregoing Findings of Fact and Conclusions of Law, the Court hereby grants Petitioner-Appellant's Application for Judicial Review of the Hearing Officer's Findings of Fact, Conclusions of Law and Decision and Exhibit "A", Filed May 8, 2014 in PDH-2014-006, filed herein on May 16, 2014, and hereby orders, adjudges and decrees that:

1.    The Hearings Officer's Findings of Fact, Conclusions of Law and Decision and Exhibit "A", filed May 8, 2014 in PDH-2014-006, is reversed; and

2.    The matter is remanded to the Hearings Officer for further proceedings consistent with this opinion.

The Circuit Court subsequently entered Final Judgment based on the 6/16/14 Order.

On July 14, 2014, the Hearings Officer issued an "Order on Motions Pending After Remand" (**Order on Remand**). The Order on Remand decided issues that had not been addressed by the 5/8/14

9

Hearings Officer Decision. The Hearings Officer then held a hearing on July 17, 2014 on two issues:

> 1. Did the County agree to defer to a ruling by the Contractors Licensing Board concerning the use of a C-42 specialty license, and/or whether a C-44 specialty license was necessary, on the project in question?
>
> 2. Are the gooseneck hood ventilators shown in the project drawings non-motorized prefabricated roof vents?

On July 30, 2014, the Hearings Officer issued "Hearings Officer Findings of Fact, Conclusions of Law, and Decision" (**7/30/14 Hearings Officer Decision**). On August 11, 2014, CCI filed its notice of appeal to the Circuit Court from the Order on Remand and the 7/30/14 Hearings Officer Decision. On September 19, 2014, the Circuit Court issued an Order Denying CCI's Notice of Appeal/Application. The Circuit Court subsequently entered Final Judgment based on the 9/19/14 Order.

The County timely appealed to this court from the Final Judgment entered pursuant to the 6/16/14 Order. CCI timely appealed to this court from the Final Judgment entered pursuant to the 9/19/14 Order.

On October 15, 2015, this court consolidated CAAP-14-0001160 and CAAP-14-0001190.

## II. STANDARD OF REVIEW

We decide this case based on jurisdictional grounds. "The existence of jurisdiction is a question of law that is reviewed *de novo* under the right/wrong standard." Carl Corp. v. State, Dep't of Educ., 93 Hawai'i 155, 171, 997 P.2d 567, 583 (2000).

## III. DISCUSSION

Based on our review of the record in this case, we hold that CCI's bid protest was untimely and, for the reasons set forth below, the Hearings Officer properly dismissed the case because the Hearings Officer did not have jurisdiction to hear the matter.

HRS § 103D-701(a) provides:

> §103D-701 **Authority to resolve protested solicitations and awards.** (a) Any actual or prospective bidder, offeror, or contractor who is aggrieved in connection with the solicitation or award of a contract may protest to the chief procurement officer or a designee as specified in the solicitation. Except as provided in sections 103D-303 and 103D-304, a protest shall be submitted in writing within five working days after the aggrieved person knows or should have known of the facts giving rise thereto; provided that a protest of an award or proposed award shall in any event be submitted in writing within five working days after the posting of award of the contract under section 103D-302 or 103D-303, if no request for debriefing has been made, as applicable; <u>provided further that no protest based upon the content of the solicitation shall be considered unless it is submitted in writing prior to the date set for the receipt of offers</u>.

(Emphasis added.) <u>See also</u> HRS § 103D-709(a) (2012).[4]

With regard to the pertinent language in HRS § 103D-701(a), the "date set for the receipt of offers" in this case was February 6, 2014, and CCI did not submit its written bid protest until February 19, 2014. The key question for purposes of whether CCI submitted a timely bid protest is whether CCI's protest is "based upon the content of the solicitation." We conclude that CCI's protest is indeed based upon the content of the Bid Solicitation because it necessarily challenges and seeks to omit material terms of the Bid Solicitation.

The Circuit Court reversed the Hearings Officer's dismissal of the protest as untimely based on its determination that "[t]he Hearings Officer's finding that the Proposal or Solicitation required a C-44 specialty contractor license for the

---

[4] HRS § 103D-709(a) addresses the jurisdiction of DCCA Hearings Officers and states:

> §103D-709 **Administrative proceedings for review.** (a) The several hearings officers appointed by the director of the department of commerce and consumer affairs pursuant to section 26-9(f) shall have <u>jurisdiction to review and determine de novo</u>, any request from any bidder, offeror, contractor, or person aggrieved under section 103D-106, or governmental body aggrieved by a determination of the chief procurement officer, head of a purchasing agency, or a designee of either officer <u>under section</u> 103D-310, <u>103D-701</u>, or 103D-702.

(Emphasis added.)

Project, is clearly erroneous[.]" In reaching its conclusion that CCI's bid protest was timely, the Circuit Court only focused on whether a C-44 licensed sheet metal contractor was a "requirement" under the Bid Solicitation. However, even if the Bid Solicitation did not "require" a C-44 licensed sheet metal contractor, the solicitation (in the Special Notice to Bidders) mandated that bidders not planning to utilize a C-44 licensed sheet metal contractor explain, in their proposals, how they would accomplish the scope of work without such a specialty contractor. The Special Notice to Bidders listed the specialty contractor classifications determined by the County as qualified to perform the work on the project (including the C-44 classification), and then immediately below that provided the Special Instructions. Given CCI's protest position that all of the project work involving sheet metal can be performed by CCI under its C-42 (roofing) and C-44A (gutters) licenses, Special Instruction #2 is particularly relevant. It states:

> SPECIAL INSTRUCTIONS TO BIDDERS REGARDING SPECIALTY CONTRACTOR CLASSIFICATIONS AND REGARDING JOINT CONTRACTORS & SUBCONTRACTORS:
>
> . . . .
>
> 2) In the circumstance where a specialty contractor classification license listed in the above table may be deemed unnecessary by a Bidder due to its intent to employ a plausible alternative means or method, the Bidder shall in its Proposal clearly state such intent and provide a detailed plan that meets with the satisfaction of the Director. The Director reserves the sole discretion and right to determine whether the Bidder's proposed justification for not listing the required license is acceptable.

(Emphasis added.)

Indeed, the Circuit Court made the following pertinent findings:

> 3. The Solicitation permitted the use of a contractor, joint contractor, or subcontractor having a specialty contractor classification other than the C-44 License to perform work included within the C-44 License's scope of work subject to review and approval by the Director of the Department of Public Works[.]

Moreover, the Circuit Court verbally explained its ruling at a June 13, 2014 hearing by stating:

> [I]t appears to the Court that the listing of the C-44, looking at all of the terms that were referred to, appear to not establish the C-44 subspecialty classification as a requirement but as a minimum requirement, and to me when they stated it as a minimum it invited the bidders to say, "Okay, you know, we've met the minimum in other ways than the C-44."

However, the Circuit Court did not also note the mandate under the Special Instructions that bid proposals that did not include a C-44 sheet metal contractor needed to explain in the proposal the plausible alternative means or method of accomplishing the work.

In the letter notifying CCI that its bid was disqualified, the Director of the Department of Public Works, Director Lee, specified that the bid was disqualified because "[y]our Proposal fails to list a C-44 – Sheet metal subcontractor or to describe an alternate means and methods by which the work required of this project covered by this license class would otherwise be legally executed." (Emphasis added.) In response, CCI's February 19, 2014 Protest Letter asserted that it should not be disqualified because: (a) the sheet metal work for the project could be performed by CCI under its C-42 roofing or C-44A gutters licenses; and (b) the use of a sheet metal contractor with a C-44 license was not required by the bid documents.

CCI's February 19, 2014 Protest Letter studiously ignores the Special Instructions in the Special Notice to Bidders which mandated that CCI explain, in its proposal, how it would accomplish the work if it chose not to utilize a C-44 licensed specialty contractor. Indeed, throughout the course of this litigation, CCI fails to address the Special Instructions and instead simply argues that the designation in the solicitation of a C-44 licensed sheet metal contractor was wrong or not required. Nonetheless, embedded and a necessary part of CCI's bid protest is its clear effort to erase the mandate in Special Instruction #2 requiring that CCI explain, in its proposal, how it would

13

accomplish the work if it did not utilize a C-44 licensed sheet metal contractor. CCI's bid protest simply cannot succeed without omitting Special Instruction #2.

We agree with the County that <u>Bombardier Transportation (Holdings) USA Inc. v. Director, Department of Budget and Fiscal Services</u>, 128 Hawaiʻi 413, 289 P.3d 1049 (App. 2012), is distinguishable. In that case, Bombardier Transportation (Holdings) USA Inc. (Bombardier) unsuccessfully submitted a best and final offer (BAFO) on a project related to the Honolulu rail transit system, with the City & County of Honolulu (City) rejecting Bombardier's BAFO as non-responsive because it was determined to be "an impermissible conditional proposal that did not conform in all material respects to the RFP." <u>Id.</u> at 416, 289 P.3d at 1052. In its protest, Bombardier asserted that the City had failed to satisfy its obligation under HRS § 103D-303(f) (2012) and administrative rules to engage in "meaningful discussions" concerning Bombardier's BAFO, and as a result, Bombardier argued that the City improperly rejected Bombardier's BAFO. <u>Id.</u> at 417-18, 289 P.3d at 1053-54. Given these circumstances, Bombardier did not seek revision of a solicitation term, but rather satisfaction of statutory obligations.

This court thus rejected the City's contention that Bombardier was protesting the contents of the solicitation and was time-barred under HRS § 103D-701(a). <u>Id.</u> at 418, 289 P.3d at 1054. In particular, we noted that Bombardier did not "seek revision of any solicitation terms[,]" and therefore, we held that Bombardier's protest was timely under HRS § 103D-701(a). <u>Id.</u>

In the instant case, quite distinct from <u>Bombardier</u>, CCI's bid protest clearly seeks to revise the Bid Solicitation by completely omitting the requirements under Special Instruction #2. In short, CCI's bid failed to meet the requirements in Special Instruction #2 and it has since sought to write those requirements out of the solicitation terms.

14

In sum, because CCI's bid protest challenges the contents of the solicitation for the project, CCI was required under HRS § 103D-701(a) to submit its bid protest prior to February 6, 2014 (the date set for the receipt of offers), which it failed to do. CCI's bid protest was thus untimely, the DCCA Hearings Officer did not have jurisdiction to review this matter, and the case was properly dismissed by the Hearings Officer.

Because the Hearings Officer did not have jurisdiction to review CCI's untimely bid protest, we do not address the other issues raised in this consolidated appeal.

### IV. Conclusion

For the reasons set forth above, the (1) "Order Granting Petitioner-Appellant Certified Construction, Inc.'s Application for Judicial Review of the Hearing Officer's Findings of Fact, Conclusions of Law and Decision," entered on June 16, 2014 and (2) the "Final Judgment" entered on November 20, 2014, both entered by the Circuit Court of the Third Circuit, are reversed.

This case is remanded to the Office of Administrative Hearings, Department of Commerce and Consumer Affairs, with instructions to dismiss this case for lack of jurisdiction.


On the briefs:

Jeffre W. Juliano,
Kristi L. Arakaki,
(O'Connor Playdon & Guben LLP)
for Petitioner-Appellant/Appellee.

Jennifer D. K. Ng,
Deputy Corporation Counsel,
County of Hawai'i,
for Respondent-Appellee/Appellant.

I respectfully dissent.

## I. County's Appeal

### A. Ruling on Bid Solicitation Documents

On appeal, the County challenges the circuit court's FOF 2 in its Order Granting CCI's Application for Judicial Review, which stated:

> 2. The Proposal and Specifications for the Project (the "Solicitation"), including the Special Notice to Bidders and the Listing of Responsible Entities, did not require the use or listing of a contractor, joint contractor, or subcontractor having a C-44 specialty contractor classification (the "C-44 License").

The County also challenges the circuit court's COL 1: "The Hearings Officer's finding that the Proposal or Solicitation required a C-44 specialty contractor license for the Project, is clearly erroneous[.]"

The Special Notice, attached to the Bid Proposal, contained specific information about specialty contractor classifications:

> As stated in the Notice to Bidders, Bidders must possess a valid State of Hawai'i, General Building Contractor's "B" license.
>
> Each of the following specialty contractor classifications listed in the table below have been determined by the County of Hawai'i as qualified to perform all of the work on this project based on the project's scope and the County's understanding of the State's licensing requirements and specialty contractor classifications' scopes of work. By way of the minimum licensing requirement stated for this project, no additional specialty contractor classifications are required to perform the work; however, the Bidder may list additional licensed subcontractors at its discretion.
>
> [List of specialty contractor classifications and scope of work applicability]
>
> SPECIAL INSTRUCTIONS TO BIDDERS REGARDING SPECIALTY CONTRACTOR CLASSIFICATIONS AND REGARDING JOINT CONTRACTORS & SUBCONTRACTORS:
>
> . . . .
>
> 2) In the circumstance where a specialty contractor classification license listed in the above table may be deemed unnecessary by a Bidder due to its intent to employ a plausible alternative means or method, the Bidder shall in its Proposal clearly state such intent and provide a detailed plan that meets with [sic] the satisfaction of the Director. The Director reserves the sole discretion and right to determine whether the Bidder's proposed justification for not listing the required license is acceptable. [(**Special Instruction Number Two**).]
>
> 3) In the circumstance where the Bidder is licensed in one or more specialty contractor classifications required of the project (whether automatically as a

general engineering contractor "A", general building contractor "B", or outright) and it intends to perform all or some of the work of those classifications using its own workforce, the Bidder shall, in its Proposal, list itself accordingly and in consideration of the balance of the instructions herein provided.

4)  In the circumstance where a specialty contractor classification required in the table above may, in part or in whole (as applicable to the classification's scope of work), be within the licensed scope of work of another listed specialty contractor classification (e.g. overlapping scopes of licenses), the Bidder shall clearly delineate in its Proposal the extent of each subcontractor's responsibility on the project such that the Director can reasonably determine which classification is responsible for the corresponding scopes. Where a listed specialty contractor classification is rendered completely unnecessary due to overlapping scopes of work, the Bidder, in its Proposal, shall clearly state such as the reason for not listing that respective entity in its Proposal. [(**Special Instruction Number Four**).]

. . . .

Anyone who disagrees with the determination in the above table shall submit their written objection to the Director identifying the specialty contractor classification(s) in question and the justification(s) for such position at least 10 consecutive calendar days prior to bid opening. If no such written objections are received by the Director prior to such date, it will be presumed that all Bidders and affected parties are in agreement with the listing set forth above. No other specialty license will be required unless noted otherwise in an addendum.

(Format altered.) The County suggests the Special Notice "clearly establishes" that possession of one of the specialty contractor licenses from the list was a requirement of the Bid Proposal.

In its May 8, 2014 FOF/COL, the OAH Hearings Officer concluded:

The Special Notice to Bidders did not specifically say that a C-44 specialty contractor license was required for the Project . . . . [T]he Special Notice to Bidders identified the C-44 specialty contractor license as one of the "minimum licensing requirement stated for the project, and no additional specialty contractor classifications are required to perform the work" and provided that it would be presumed that "all Bidders and affected parties are in agreement with the listing set forth above" if written objections were not filed with the [County] ten consecutive days prior to the bid opening. Additionally, in allowing for the bidder to identify an alternate means or method to perform the work for a specialty classification license listed in the table, [County] "reserved the sole discretion and right to determine whether the Bidder's proposed justification for not listing the required license is acceptable." Taken as a whole, the Hearings Officer finds that the Proposal required a C-44 specialty contractor

license for the Project.

(Brackets in original omitted.)

At the hearing held June 13, 2014 in the circuit court, the court explained its conclusion to reverse the OAH Hearings Officer:

> Given what is clarified to now [sic] the Court to be the posture of the parties with respect to this appeal the Court's inclination is to vacate the order to dismiss and remand. And the basis of that would be that it appears to the Court that the listing of the C-44, looking at all of the terms that were referred to, appear to not establish the C-44 subspecialty classification as a requirement but as a minimum requirement, and to me when they stated it as a minimum it invited the bidders to say, "Okay, you know, we've met the minimum in other ways than the C-44."

I agree with the circuit court's interpretation of the Bid Proposal and Special Notice.

The "Special Instructions" in the Special Notice contain conflicting provisions, most notably Special Instruction Number Two and Special Instruction Number Four. However, the language of Special Instruction Number Two suggests that even if the specialty contractor license was "required" as stated in Special Instruction Number Four, this "requirement" could be bypassed by the process outlined in Special Instruction Number Two. Under Special Instruction Number Two, a bidder may determine that it did not need a specialty license by employing an alternate means or method and could circumvent the specialty contractor license requirement by clearly stating its intent to do so and by providing a detailed plan in its proposal. The Special Notice clearly contemplated the possibility that a bidder would not list any of the specialty contractor licenses in its bid.

I would affirm the circuit court's finding that "[t]he Hearing[s] Officer's finding that the [Bid] Proposal or Solicitation required a C-44 specialty contractor license for the Project, is clearly erroneous[.]" See HRS § 103D-710(e)(5); Southern Foods, 89 Hawai'i at 452, 974 P.2d at 1042 ("A COL that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the conclusion is dependent upon the facts and circumstances of the particular case." (citations omitted) (quoting Price v. Zoning Bd. of Appeals of

3

City and Cty. of Honolulu, 77 Hawaiʻi 168, 172, 883 P.3d 629, 633 (1994))).

**B. Timeliness of Bid Protest Submission**

The County next challenges the circuit court's conclusion that "[t]he Hearings Officer erred in concluding that [CCI's] protest of the disqualification of its bid was required to be submitted ten calendar days prior to bid opening or no later than February 5, 2014[,]" and its related conclusion that CCI's "protest of the disqualifaction of its bid was timely submitted on February 19, 2014[.]"

In the May 8, 2014 FOF/COL, the OAH Hearings Officer held:

> Taken as a whole, the [OAH] finds that the Proposal required a C-44 specialty contractor license for the Project. Accordingly, . . . if [CCI] disagreed with [County's] assessment that a C-44 specialty contractor license was required and believed that the work could be done with its C-42 and C-44A specialty contractor licenses in lieu of the required C-44 license, it was incumbent upon them to file a written objection ten calendar days prior to bid opening or at the latest, by February 5, 2014, the day before bid opening. Since [CCI] did not protest until February 19, 2014, the [OAH Hearings Officer] concludes that its protest was untimely and [OAH] does not have jurisdiction to hear this matter.

The circuit court did not explain its reasoning reversing the OAH when in issued the Order Granting CCI's Aplication for Judicial Review.

The Procurement Code[1] applies "to all procurement contracts made by governmental bodies . . . ." HRS § 103D-102(a) (2012 Repl.). Under the Procurement Code,

> [a]ny actual or prospective bidder, offeror, or contractor who is aggrieved in connection with the solicitation or award of a contract may protest to the chief procurement officer or a designee as specified in the solicitation. Except as provided in sections 103D-303 and 103D-304, a protest shall be submitted in writing within five working

---

[1] The purpose of the Procurement Code "is to revise, strengthen, and clarify Hawaii's laws governing procurement of goods and services and construction of public works." CARL Corp. v. State, Dep't of Educ., 85 Hawaiʻi 431, 455, 946 P.2d 1, 25 (1997) ("CARL I") (quoting S. Stand. Comm. Rep. No. S8-93, in 1993 Senate Journal, at 39). The Procurement Code was established to: "(1) Provide for fair and equitable treatment of all persons dealing with the government procurement system; (2) Foster broad-based competition among vendors while ensuring accountability, fiscal responsibility, and efficiency in the procurement process; and (3) Increase public confidence in the integrity of the system." CARL I, 85 Hawaiʻi at 26, 946 P.2d at 456 (quoting S. Stand. Comm. Rep. No. S8-93, in 1993 Senate Journal, at 39).

> days after the aggrieved person knows or should have known of the facts giving rise thereto . . . provided further that no protest based upon the content of the solicitation shall be considered unless it is submitted in writing prior to the date set for the receipt of offers.

HRS § 103D-701(a).

HRS § 103D-701(a) contemplates two types of protests: a protest based on the content of a solicitation and a protest not based on the content of a solicitation.  Under the final provision of § 103D-701(a), a protest based on the content of a solicitation must be submitted in writing before the due date for bid offers.  A protest concerning the rejection of a proposal rather than the contents of a proposal, however, does not need to be submitted prior to the date set for the receipt of offers.  See Bombardier Transp. (Holdings) USA Inc. v. Dir., Dep't of Budget and Fiscal Servs., City and Cnty. of Honolulu, 128 Hawai'i 413, 418, 289 P.3d 1049, 1054 (App. 2012) (involving a protest challenging the City's failure to engage in meaningful discussions resulting in the alleged wrongful rejection of a best and final offer).

The County distinguishes Bombardier by arguing that CCI "protested the contents of the [Bid Proposal], not the circumstances resulting in the disqualification of its bid." CCI's protest, however, does not seek any revision in the solicitation terms, as was the case in Bombardier.  Instead, the Protest Letter explicitly targeted to the "disqualification of CCI and rejection of CCI's bid . . . as described in the Department's letter of February 14, 2014[.]"

The majority opinion suggests that the protest was based on the content of the solicitation because "embedded and a necessary part of CCI's bid protest, is its clear effort to erase the mandate in Special Instruction #2 requiring that CCI explain, in its proposal, how it would accomplish the work if it did not utilize a C-44 licensed sheet metal contractor."  Thus, the majority concludes that the protest sought revision of the solicitation terms, distinguishing this case from the protest in Bombardier.  Bombardier, however, involved a protest of the City's rejection of Bombardier's bid as non-responsive, and we construed the protest of a rejection as a protest based not on

5

the content of a solicitation. Bombardier, 128 Hawai'i at 418, 289 P.3d at 1054. Like the protest in Bombardier, CCI's protest letter challenged the rejection and disqualification of its bid as non-responsive.

Consistent with Bombardier, I would hold that CCI's bid was a protest not based on the content of the solicitation. The circuit court therefore did not err in its conclusion that CCI's protest was not required to be submitted by February 5, 2014, the due date for bid proposals.

I next address to the circuit court's conclusion that CCI's "protest of the disqualification of its bid was timely submitted on February 19, 2014." Protests under HRS § 103D-701(a) that do not challenge the content of the solicitation are required to be "submitted in writing within five working days after the aggrieved person knows or should have known of the facts giving rise thereto[.]" HRS § 103D-701(a). The County informed CCI in writing on February 14, 2014 that CCI's bid was disqualified. CCI submitted its written protest on February 19, 2014, within the five day requirement under HRS § 103D-701(a). Therefore, I would affirm the circuit court's conclusion that CCI's Protest Letter was timely submitted on February 19, 2014.

## II. CCI's Appeal

### A. July 30, 2014 FOF/COL

#### 1. Jurisdiction

CCI and the County were asked to brief the following jurisdictional question for the OAH Hearings Officer: "Does the [OAH] have jurisdiction in this matter to consider [CCI's] claim that the County must defer to an opinion of the [CLB] that was not brought to the County's attention until after the County's protest denial letter [dated] March 21, 2014?"

On appeal, CCI contends the OAH Hearings Officer erroneously concluded, as did the circuit court in affirming the OAH's conclusion, that the OAH did not have jurisdiction "to consider CCI's arguments (1) that 'the County had agreed to defer to a decision by the CLB' and (2) that 'the CLB's opinion was in favor of CCI's position on the C-42 licensing issue and should be followed . . . .'" (Brackets omitted.) CCI explains, "CCI could

6

not raise these 2 issues because it did not have a favorable decision from the CLB until the CLB orally decided the C-42 licensing question at its March 21, 2014 meeting and issued [its Response Letter] on April 8, 2014." CCI argues, "[u]nder the OAH's view, no protesting bidder could ever utilize an oral or written opinion from the CLB regarding a scope of specialty license dispute because . . . such [an] opinion takes a minimum of 30 days to obtain."

Further, CCI asserts the CLB's Response Letter was not a "claim," as described by the OAH Hearings Officer, but instead "evidence in support of CCI's bid protest argument that it had all the proper licensure to perform the required project work."

> Under the Public Procurement Code, hearings officers
>
> have jurisdiction to review and determine de novo, any request from any bidder, offeror, contractor, or person aggrieved under section 103D-106, or governmental body aggrieved by a determination of the chief procurement officer, head of a purchasing agency, or a designee of either officer under section 103D-310, 103D-701, or 103D-702.

HRS § 103D-709(a) (2012 Repl.).

> The hearings officer shall decide whether the determinations of the chief procurement officer or the chief procurement officer's designee were in accordance with the Constitution, statutes, rules, and the terms and conditions of the solicitation or contract and shall order such relief as may be appropriate in accordance with this chapter.

HRS § 103D-709(h) (2012 Repl.). "The hearings officers shall have power to issue subpoenas, administer oaths, hear testimony, find facts, make conclusions of law, and issue a written decision . . . ." HRS § 103D-709(b) (2012 Repl.). "All parties to the proceeding shall be afforded an opportunity to present oral or documentary evidence, conduct cross-examination as may be required, and present argument on all issues involved. Fact finding under [HRS §] 91-10 [(2012 Repl.)[2]] shall apply." HRS

---

[2] HRS § 91-10 provides:

> **§91-10 Rules of Evidence; official notice.** In contested cases:
>
> (1)    Except as provided in section 91-8.5, any oral or documentary evidence may be received, but every agency shall as a matter of policy provide for the exclusion of irrelevant, immaterial, or

(continued...)

§ 103D-709(c) (2012 Repl.).

The OAH Hearings Officer prevented CCI from introducing the CLB's Response Letter as documentary evidence. The CLB Response Letter stated:

> At its March 21, 2014 meeting, the [CLB] discussed your March 11, 2014 letter and inquiry regarding whether the reroofing for fire maintenance show & fire dispatch/warehouse project work may be performed under a C-42 Roofing or C-44a Gutters contractor and that <u>a C-44 Sheet metal contractor license is not required</u>.

(Emphasis added.)  The OAH Hearings Officer concluded:

> [T]he hearings officer can only make a decision about the "determinations" of the chief procurement officer, and the chief procurement officer can only make "determinations" about complaints brought before that officer. [HRS § 103D-709(a) and (h)] literally leaves no room for the hearings officer to make decisions about matters that were not previously the subject of a determination by the chief procurement officer. . . .
>
> In the present case, [CCI] did not assert as a basis

---

[2](...continued)

> unduly repetitious evidence and no sanction shall be imposed or rule or order be issued except upon consideration of the whole record or such portions thereof as may be cited by any party and as supported by and in accordance with the reliable, probative, and substantial evidence.  The agencies shall give effect to the rules of privilege recognized by law;
>
> (2)  Documentary evidence may be received in the form of copies or excerpts, if the original is not readily available; provided that upon request parties shall be given an opportunity to compare the copy with the original;
>
> (3)  Every party shall have the right to conduct such cross-examination as may be required for a full and true disclosure of the facts, and shall have the right to submit rebuttal evidence;
>
> (4)  Agencies may take notice of judicially recognizable facts.  In addition, they may take notice of generally recognized technical or scientific facts within their specialized knowledge; but parties shall be notified either before or during the hearing, or by reference in preliminary reports or otherwise, of the material so noticed, and they shall be afforded an opportunity to contest the facts so noticed; and
>
> (5)  Except as otherwise provided by law, the party initiating the proceeding shall have the burden of proof, including the burden of producing evidence as well as the burden of persuasion. The degree or quantum of proof shall be a preponderance of the evidence.

> for its protest that the County had agreed to defer to a decision by the [CLB], and that the [CLB's] opinion was in favor of [CCI's] position on the C-42 licensing issue and should be followed, until after the County had issued its protest denial letter of [sic] March 21, 2014.  The County's chief procurement officer or that officer's designee never made a "determination" on either of these two claims.
>
> . . . .
>
> [T]he Hearings Officer concludes that there is no jurisdiction in this matter to consider [CCI's] claim that County must defer to the opinion of the [CLB] dated April 8, 2014.

The OAH Hearings Officer treated the CLB Response Letter as an independent "determination" for which the OAH had no jurisdiction to hear.

CCI is correct in its assertion that the CLB Response Letter was merely evidence in support of its contention that the sheet metal work could be performed under the licenses CCI had already secured.  CCI's Protest Letter addressed specifically whether the sheet metal work required by the project could be performed under the C-42 and C-44A licenses.  Under HRS § 103D-709(c), CCI was entitled to present this documentary evidence to the OAH in support of its protest.  The CLB Response Letter did not divest the OAH of jurisdiction to consider the content of the letter.  The OAH Hearings Officer's conclusion that it did not have jurisdiction "to consider [CCI's] claim that County must defer to the opinion of the [CLB] dated April 8, 2014" was incorrect, and the circuit court erred in affirming the OAH decision.

Because I conclude that the OAH had jurisdiction over CCI's protest in the Protest Letter dated February 19, 2014 and was required to let CCI introduce the CLB Response Letter as documentary evidence, I do not consider the issue of the doctrine of futility, discussed at length in the July 30, 2014 FOF/COL.

Although the OAH Hearings Officer erred in finding that it lacked jurisdiction to consider the content of the CLB Response Letter, the OAH Hearings Officer, "out of an excess of caution given the protracted proceedings in this matter" went on to consider whether the County agreed to defer to a CLB ruling.  The OAH Hearings Officer's error regarding its jurisdiction over the CLB Response Letter issue is harmless because, as discussed

in section 3 below, I would affirm the OAH Hearings Officer's decision that the County did not agree to defer to decision by the CLB.

### 2. CLB's Opinion on Gooseneck Hood Ventilator Issue

CCI argues that the OAH Hearings Officer erred in concluding that the CLB Response Letter was not determinative of the "gooseneck hood ventilator issue."[3]

The OAH Hearings Officer concluded:[4]

> The [CLB's] opinion is informal in nature and does not even bind the [CLB] to honor its own opinion. A formal opinion can only be obtained through the use of a declaratory relief petition that would provide for notice to the County and an opportunity for the County to be heard by the [CLB]. That did not happen in this case, so the [CLB's] opinion must be considered solely as evidence of the [CLB's] inclinations--the [CLB] uses this type of opinion as a quick mechanism to provide some guidance to the parties so that they might take this informal opinion into account on an expedited basis not available if a declaratory relief petition were involved.

CCI challenges the OAH Hearings Officer's conclusion that the CLB Response Letter was informal in nature. CCI argues:

> Although the CLB oral decision of March 21, 2014 and [CLB Response Letter] were issued as part of an informal proceeding rather than a lengthy declaratory relief action, the decisions are nonetheless relevant evidence, and the only evidence in this entire case from an expert body that is dedicated and statutorily authorized to determine the scope of specialty contractors licenses. Indeed, if the OAH Final Decision were correct in its assertion that informal opinions from the CLB should not be considered in license scope disputes, then there would be no reason to even allow the CLB to issue informal opinions and the entire subchapter regarding such opinions would be eviscerated.

(Emphasis omitted.)

Title 16 of HAR Chapter 201, Subchapter 5, guides the CLB in its informal proceedings and interpretations. HAR §§ 16-

---

[3] The "gooseneck hood ventilator issue" refers to the second question directed to the parties at the July 17, 2014 evidentiary hearing: "Are the gooseneck hood ventilators shown in the project drawings non-motorized prefabricated roof vents?"

[4] Although the OAH Hearings Officer erroneously concluded that it did not have jurisdiction to consider issues relating to the CLB Response Letter, the OAH issued its decision on the substance of CCI's claim, stating, "Again, while there is no jurisdiction to consider this issue, out of an abundance of caution the Hearings Officer sets forth the following conclusions on the issue." Since I have concluded that the OAH did have jurisdiction to consider the issues related to the CLB Response Letter, I address the merits of the CCI's appeal as if the OAH Hearings Officer had determined the OAH had jurisdiction.

201-85 et seq.

> §16-201-85 **Purpose, scope, and construction.** (a) The purpose [of Subchapter 5] is to clarify that any board or commission may issue informal interpretations in addition to and supplemental to any power to grant declaratory relief provided for elsewhere in this chapter. The purpose of this Subchapter is to facilitate prompt decision making in matters where no formal ruling is desired or needed by any person and where the interpretation can be stated without the necessity of an evidentiary hearing and without consideration of legal arguments.

HAR § 16-201-85(a) (effective 1990); see also HRS § 444-4(9) (2013 Repl.).[5]

CCI in support of its position cites to HAR § 16-201-88(b) (effective 1990), which provides:

> §16-201-88 **Form of requests for informal interpretations.**
>
> . . . .
>
> (b) In determining whether a particular injury is appropriate for the issuance of an informal interpretation, the following factors shall be among those considered:
>
> (1) Whether the facts set forth by the requester are sufficiently detailed and clear to allow the board or commission to understand the requester's circumstance;
>
> (2) Whether the question being asked is clear; and
>
> (3) Whether there has been a consistent historical pattern of deciding similar inquiries upon which the board or commission can base its response.

CCI uses these factors to suggest that the CLB Response Letter is determinative of issues it considered, including the "gooseneck hood ventilator issue." These factors do not, however, lead to the conclusion that an informal opinion of the CLB is binding on the OAH.

While CCI is correct in its assertion that "the [CLB's] decisions are . . . relevant evidence," CCI does not provide any authority that undermines the OAH Hearings Officer's conclusion that the CLB Response Letter was not binding on the OAH. Based on CCI's challenge, I would not hold that the OAH Hearings Officer's conclusion was in violation of constitutional or statutory provisions, was in excess of its statutory authority or

---

[5] HRS § 444-4(a) mandates that the CLB shall "[i]ssue informal nonbinding interpretations or declaratory rulings[.]"

jurisdiction, or was affected by other error of law. See HRS § 103D-710(e).

### 3. County's Agreement to Defer to CLB's Ruling

CCI disputes the OAH Hearings Officer's FOF 41: "[Imanaka] did not state in [his conversation with Kevin Simpkins, President of CCI (**Simpkins**)] that the County would wait for a ruling from the [CLB] and/or defer to a ruling of the [CLB] on this particular project."

In support of its argument, CCI cites only to the February 18, 2014 email from Imanaka to Simpkins, in which Imanaka wrote, "We will need a [CLB] determination allowing the C-42 to provide the classification scope of work listed under the C-44, in order for us to negate the requirement for a C-44 sheet metal contractor."

In addition to the email from Imanaka, Simpkins testified at the OAH hearing that in his telephone conversation with Imanaka, his recollection was that "[the County] had stated their position [in the Disqualification Letter] and that [CCI] would have to get a ruling from the [CLB] with respect to the issue at hand which was the C-44 which was not listed." Simpkins explained, "I don't know exactly [whether it was] before or after I received the [Disqualification Letter], but I did have a conversation with [Imanaka] regarding the [CLB] and that they would defer to a ruling from the [CLB]."

Imanaka, on the other hand, was asked whether he promised Simpkins that the awarding of the contract would be delayed for a ruling or other information provided by CCI, to which Imanaka responded "No." Explaining his email to Simpkins, Imanaka testified:

> I asked if we will need a [CLB] determination allowing the C-42 to provide the scope of work listed under the C-44 in order for us to negate the requirement for a C-44 with -- to give it the benefit of the doubt in case my interpretation was wrong.
>
> And what normally we'd do if that determination was that a 42 can do the work, I did not tell this to [Simpkins] though, this is for my knowledge and my information to go back to the Director who -- because it's up to his discretion yeah.

CCI, which bore the burden of proof as well as the

burden of persuasion under HRS § 103D-709(c),[6] has not provided enough evidence to establish by a preponderance of the evidence that the County agreed to defer to the CLB's decision.

The OAH Hearings Officer's FOF 41 was not clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. See HRS § 103D-710(e).

### 4. CCI Admits Installation of Gooseneck Hood Ventilators Was Not Within Scope of C-42 License

On appeal, CCI challenges the OAH Hearings Officer's conclusion:

> Any assertion by [CCI] that the installation of the ventilators was incidental and supplemental to its roofing work is an admission that installation of the ventilators was not covered by [CCI's] C-42 license. It is an admission that the County was correct with respect to the ventilators and that a C-42 license was not sufficient to allow [CCI] to legally install the ventilators (unless there was some exception). [CCI] relies on the "incidental and supplemental" exception.

(Emphasis omitted.) The OAH Hearings Officer's conclusion was based on CCI's February 19, 2014 Protest Letter, which stated, in the section titled "Sheet Metal Work Can Be Performed Under the C-42 and C-44A Licenses," "the issue of whether roof flashing installation may be performed by a roofing contract because it is expressly included within or because it is incidental and supplemental to the scope of work of [CCI's] C42 roofing contractor license, has been considered in the past by other State/County procurement agencies." (Footnote omitted).

In the July 30, 2014 FOF/COL, the OAH Hearings Officer

---

[6] HRS § 103D-709(c) provides:

§ 103D-709 Administrative proceedings for review.

. . . .

(c) Only parties to the protest made and decided pursuant to sections 103D-701, 103D-709(a), 103D-310(b), and 103D-702(g) may initiate a proceeding under this section. The party initiating the proceeding shall have the burden of proof, including the burden of producing evidence as well as the burden of persuasion. The degree or quantum of proof shall be a preponderance of the evidence. All parties to the proceeding shall be afforded an opportunity to present oral or documentary evidence, conduct cross-examination as may be required, and present argument on all issues involved. Fact finding under section 91-10 shall apply.

did not cite to any authority supporting its conclusion that CCI's statement was an admission that a C-42 license was insufficient for the installation of ventilators. The language of CCI's Protest Letter suggests that CCI was merely reciting the issue under protest to the County, and was not a definitive assertion that the roofing work was "incidental and supplemental"[7] to the scope of work under the C-42 license.

CCI does not identify a particular holding the OAH Hearings Officer made that was supported by this erroneous conclusion. The conclusion CCI challenges is merely dicta. Although the OAH Hearings Officer's conclusion that CCI admitted its license did not cover the roofing work was erroneous, it was harmless error. See Hawai'i Rules of Civil Procedure Rule 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

Therefore, I would affirm the following, entered in the Circuit Court of the Third Circuit:

(1) the June 16, 2014 "Order Granting Petitioner-Appellant Certified Construction, Inc.'s Application for Judicial Review of the Hearing Officer's Findings of Fact, Conclusions of Law and Decision and Exhibit 'A', filed May 8, 2014 in PDH-2014-006, Filed May 16, 2014";

(2) the September 19, 2014 "Order Denying Petitioner-Appellant Certified Construction, Inc.'s Notice of Appeal/Application for Judicial Review of the Hearings Officer's (1) Findings of Fact, Conclusions of Law and Decision and Exhibit 'A', filed July 30, 2014 and (2) Order on Motions Pending After Remand, filed July 14, 2014, in PDH-2014-006";

(3) the oral order denying Certified Construction, Inc.'s "Notice of Appeal/Application for Judicial Review of the Hearing Officer's (1) Findings of Fact, Conclusions of Law and Decision and Exhibit 'A', filed July 30, 2014 and (2) Order on

---

[7] HAR § 16-77-34 (effective 2004) defines "incidental and supplemental" as "work in other trades directly related to and necessary for the completion of the project undertaken by a licensee pursuant to the scope of the licensee's license."

14

Motions Pending After Remand, filed July 14, 2014, in PDH-2014-006"; and

(4) "the deemed denial on September 8, 2014" of Certified Construction, Inc.'s "Notice of Appeal/Application for Judicial Review of the Hearing Officer's (1) Findings of Fact, Conclusions of Law and Decision and Exhibit 'A', filed July 30, 2014 and (2) Order on Motions Pending After Remand, filed July 14, 2014, in PDH-2014-006."

Daniel R. Foley